IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FRANKLIN BROCK, #346739** | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. PWG-13-750 |
| **JOHN WOLFE, WARDEN,** *et al.*, | * | |
| Respondents. | | |
| | ***** | |

## MEMORANDUM

Petitioner Franklin Brock seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2007 convictions in the Circuit Court for Baltimore County. ECF No. 1. Respondents were directed to respond to the petition and have done so. ECF Nos. 2 & 8. Brock, who was afforded the opportunity to file a reply, has not done so. *See* ECF No. 2. This matter has been fully briefed. Upon review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, Brock's petition for writ of habeas corpus IS DENIED AND DISMISSED WITH PREJUDICE.

### Background and Procedural History

Brock, who was charged with distribution of cocaine, possession with intent to distribute cocaine, possession of cocaine, possession of marijuana, second-degree assault, carrying a concealed weapon and driving while his privilege to drive a motor vehicle was revoked and suspended, was tried by a jury over a two-day period in the Baltimore County Circuit Court,

commencing October 11, 2007. As set forth by the Court of Special Appeals of Maryland, the following facts were established at trial:

> Sergeant Matthew Ryan Smith of the Baltimore County Police Department's Community Drug and Violence Interdiction Team in Essex testified as an expert in the area of identification and distribution of narcotics that on 27 April 2007, he was conducting surveillance of the parking lot of Mr. B.'s Lounge because there had been numerous complaints about drug activity and prostitution at that location. He observed a black male wearing a black shirt with the number seven on it, whom he identified as appellant, getting in and out of a Buick automobile that had its hood up every time a car pulled onto the lot. The officer saw a female come out of the bar, meet appellant and hand something to him, and he observed appellant hand something back to the woman. The two parted after about 15 seconds. Sergeant Smith did not see any drugs or money exchanged. Subsequently, he observed a car pull into the parking lot and he saw a person in the car hand something to appellant and appellant hand something to the person in the car. Thereafter, Sergeant Smith observed a yellow cab pull into the parking lot and appellant get into the back seat. The cab driver handed something to appellant and appellant handed something to him before getting out of the cab. Sergeant Smith described each of these three events as hand-to-hand transactions, and said that from his training, knowledge, and experience as a police officer, the individuals he had observed were providing money to appellant in exchange for narcotics.
>
> Subsequently, Sergeant Smith watched appellant get into his car and drive out of the parking lot. The Sergeant then used his radio to give a patrol unit the tag number on appellant's vehicle, and the patrol unit subsequently told Sergeant Smith that the departing vehicle had an insurance violation. Sergeant Smith continued his surveillance by driving behind appellant's vehicle until a police unit could make a stop for the insurance violation.
>
> Although Sergeant Smith saw Detective Michael Nesbitt stop appellant's vehicle, he drove past them. He then heard a dispatcher say that 911 calls had been received indicating that a police officer was involved in a fight on Interstate 695. Sergeant Smith turned his vehicle around and drove back to the place where Officer Nesbitt had stopped appellant.
>
> Detective Michael Nesbitt testified that he was on patrol on 27 April 2007, when he was contacted by Sergeant Smith concerning a subject in a beige Buick bearing tag number 2BPJ86, making drug transactions in the parking lot of Mr. B's. Detective Nesbitt ran the tag number and learned that there had been a lapse of insurance and the registration for that vehicle had been suspended by the Motor Vehicle Administration. Detective Nesbitt stopped the vehicle on the outer loop of Interstate 695, approached the driver, asked him for his license and registration, and was informed by appellant that he did not have a driver's license and that it

2

had been suspended. Detective Nesbitt asked appellant to step out of his vehicle, which he did, handcuffed him, and attempted to move him to the trunk area, away from the traffic, to be searched for weapons. When the detective observed appellant trying to reach into his pockets, he told him not to do so, but appellant persisted. Appellant then forced himself off the car and, using his body pushed back and turned on Detective Nesbitt, and the two began tussling on the side of Interstate 695. A K-9 officer arrived on the scene. At that point, Detective Nesbitt observed a knotted baggie containing a white powdery substance begin to fall out of appellant's pocket along with some money. Detective Nesbitt seized the bag containing what was later identified as cocaine and $200 in cash. In a search incident to the arrest, the detective recovered smoked pieces of a cigar that had residue of green, burned vegetable matter that he believed to be marijuana. He also recovered from under the driver's seat a large kitchen knife and a cell phone. Tests performed by the Baltimore County Forensic Service Laboratory identified the white powdery substance as two grams of cocaine and found trace amounts of marijuana in a cigar butt. An additional cigar was not analyzed.

On cross-examination, Detective Nesbitt testified that a common way to sell cocaine is to break off a piece of cocaine and give it to the purchaser. He acknowledged that cocaine can be sold in vials, but no vials were recovered in this case. He further testified that although $200 in cash was recovered, it was not seized because "at the time we weren't seizing any money under $500." He acknowledged, however, that money would be very valuable in showing that appellant was selling drugs at Mr. B's.

Baltimore County Police Detective Frank Massoni, who is also a member of the Community Drug and Violence Interdiction Team, testified as an expert in the area of identification, packaging, and distribution of narcotics. He opined that "the drugs that were recovered were for distribution." He also testified about a practice referred to as pinching, which involves breaking or pinching off a piece of cocaine for personal use or sale.

Testifying on his own behalf, appellant said he was 27 years old, had a twelfth grade education, and was employed by Taco Bell. On the day in question, he was at Mr. B's shooting pool and having drinks. Eventually, he went outside the bar to the parking lot to meet a friend and, at some point, a woman came from Mr. B.'s to the parking lot and gave him his cell phone, which he had left inside the bar.

The car appellant had been driving, which belonged to his girlfriend, would not start, so he called a cab. Eventually, however, he was able to start the car, and he drove away. After driving on Interstate 695 for about twenty minutes, appellant was pulled over by police and asked for his driver's license and registration. Appellant told the officer that the car belonged to his girlfriend and that his license had been suspended. At trial, appellant stipulated that his license had been both suspended and revoked. Appellant testified that the officer asked

him to step out of the vehicle and get behind the car to avoid the traffic on the interstate, and that the officer had him put his hands on the hood of the officer's vehicle, which was hot. When the officer pinned appellant's "whole body on the hood of the car," appellant began to struggle. According to appellant, he was not trying to resist arrest, but was only communicating to the officer that the hood of the car was hot. Appellant testified that the officer said, "I thought you were black, you liked it." Appellant claimed that the officer was "getting me angry on purpose; I thought he was taunting me." Appellant denied having cocaine in his pocket or any drugs on his person, and he denied knowing that the kitchen knife was in his girlfriend's car.

*Brock v. State*, No. 2177, slip op. at 1–6 (Md. Ct. Spec. App. June 25, 2009) (unreported), Resp. Ex. 6.[1]

After deliberating less than an hour, the jury sitting in the Circuit Court for Baltimore County found Brock not guilty of distribution of cocaine, but guilty of possession with intent to distribute cocaine, possession of cocaine, possession of marijuana, second-degree assault, carrying a concealed weapon, and driving a motor vehicle on a revoked and suspended driver's license. Oct. 12, 2007 Tr. 57–58, Resp. Ex. 3. The same date of the jury's verdict, Circuit Court Judge Robert E. Cahill, Jr. sentenced Brock to a twenty-year term of incarceration on the possession with intent to distribute cocaine count, with all but fifteen years suspended, the first ten years to be served without the possibility of parole; ten years as to the second-degree assault charge, with all but five years suspended, to be served consecutive to the possession with intent to distribute cocaine count. The terms were to be served consecutively to the last sentence to expire of all outstanding and unserved Maryland sentences. *Id.* at 60-62. The sentences on the remaining convictions were generally suspended. *Id.* Thus, Brock was sentenced to a total term of twenty years in the Division of Corrections, the first ten years to be served without the possibility of parole. *Id.*

---

[1] Defendant filed its exhibits with the Clerk's Office due to their length. *See* ECF No. 8-1.

Brock filed a direct appeal to the Court of Special Appeals of Maryland through counsel, challenging the sufficiency of the evidence to support his conviction on the charge of possession with intent to distribute cocaine, based on his claims that there were inconsistent verdicts and the same facts used by the jury to acquit him on the cocaine distribution charge could not be used to establish possession with intent to distribute cocaine. Appellant's Br., Resp. Ex. 4. On June 25, 2009, the Court of Special Appeals of Maryland issued an unreported opinion which affirmed Brock's drug convictions. *Brock*, No. 2177, slip op. at 1. On September 14, 2009, the Court of Appeals of Maryland denied Brock's petition for writ of certiorari. Sept. 14, 2009 Order, Resp. Ex. 8.

On October 19, 2009, Brock filed a post-conviction petition in the Circuit Court for Baltimore County. Pet., Resp. Ex. 9. He raised the following original and "supplemental/amended" grounds: trial counsel was ineffective due to (1) his failure to request a "proof of intent" instruction; (2) his conceding Brock's guilt to possession of drugs and carrying a concealed weapon in his closing argument; (3) his failure to strike three jurors from the venire panel; (4) his failure to consult with Brock during jury selection; (5) his failure to object when the trial judge stated the wrong date of the criminal event during voir dire; and (6) his failure to subpoena and call defense witnesses. *Id.* at 4–5; Am. & Supp. Pet., Resp. Ex. 10.

A hearing on Brock's post-conviction petition was held on January 10, 2012. Jan. 10, 2012 Tr., Resp. Ex. 11. On January 17, 2012, Circuit Court Judge Timothy J. Martin denied post-conviction relief. Op. & Order, Resp. Ex. 12. Brock's application for leave to appeal the ruling was summarily denied by the Court of Special Appeals on January 25, 2013, with the intermediate appellate court's mandate issued on February 25, 2013. App. & Mandate, Resp. Exs. 13 & 14.

Brock raises the following grounds for federal habeas corpus review: (A) ineffective assistance of trial counsel due to counsel's failure to: (i) strike several jurors during voir dire; (ii) maintain Brock's innocence; (iii) request a "proof of intent" instruction; and (iv) call defense witnesses, and (B) the jury verdict was inconsistent. Pet.

**Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Brock's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254, which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7(1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, ---- U.S. ----, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 134 S. Ct. 1697, 1702 (2014), quoting *Harrington v. Richter*, ---- U.S. ----, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

Under the Antiterrorism and Effective Death Penalty Act (the "Antiterrorism Act"), a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Lee v.*

*Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts." *Id.* "'[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'" *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

7

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

## Analysis

The grounds presented are not unexhausted, time-barred, or procedurally defaulted. I shall therefore address the merits of Brock's claims.

**I.      Trial Counsel Error**

Brock alleges that his trial counsel was ineffective due his failure to strike several jurors during voir dire, maintain Brock's innocence throughout the case, request a "proof of intent" instruction, and call defense witnesses. Upon examination of the trial transcripts and post-conviction exhibits provide to the court, I find no basis to reverse Judge Martin's post-conviction decisions regarding these claims

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that "counsel's representation fell below an objective standard of reasonableness" and that his defense was prejudiced as a result of counsel's conduct. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, ---- U.S. ----, 134 S. Ct. 10, 17 (2013). The presumption of adequacy is so strong that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *See Strickland*, 466

8

U.S. at 690, 696. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring). Further, "[i]n cases where a conviction has been as a result of trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted." *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

A showing of prejudice requires that (1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient.

*See Strickland*, 466 U.S. at 697. "[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel, we review the claim" under the Antiterrorism Act standard discussed previously, as well as the *Strickland* standard. *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (citing *Harrington v. Richter*, ---- U.S. ----, 131 S. Ct. 770 (2011)). The standards "are dual and overlapping, and we apply the two standards simultaneously rather than sequentially." *Id.*

Brock first contends that his trial counsel provided ineffective assistance by failing to strike several jurors during voir dire as the jurors' answers to venire queries raised questions regarding their fairness and impartiality. Judge Martin rejected this post-conviction claim, stating:

> This Court reviewed the transcript of the voir dire question and notes that on page 21 the court asks one prospective juror, "could you put all that aside and be a fair and neutral juror in this case?" Response: "If I had to be, yeah, I think so." The court went on, "well you will have to be," and the response was, "well, exactly, of course."
>
> Even assuming the allegations of the Petition that the remarks by the jurors were as he describes, this Court cannot find that the jurors were somehow unfair or partial in this case. It must be noted that at the end of most of the voir dire, certainly in this case the judge asked what we call the "catch-all" question, i.e., "do any of the jurors have anything that has not been addressed, or know of anything or feel anything that would affect their ability to be fair and honest and reach a fair and honest verdict?" and there was certainly no response from the three jurors in question. This Court does not believe that this represented any deficiency in the trial counsel's actions nor does the Court see any prejudice occasioned upon the Defendant. Petition is DENIED.

Op. & Order 5–6.

Brock's second ineffective assistance claim involves trial counsel's failure to maintain Brock's innocence throughout the case before the jury. Brock testified at trial that the "drugs [were not his] and [he did not] get high." He asserts that during closing argument, his trial attorney presented a theory that was inconsistent with his claim of innocence as he told the jury

that Brock was guilty of possession and that he should be found guilty of possession and carrying a concealed weapon. Pet.; *see also* Jan. 10, 2012 Tr. 12–13. In his post-conviction decision, Judge Martin rejected the claim, finding that:

> To this Court, this allegation is unpersuasive. Tactics employed by the trial counsel are within his broad discretion. The jurors' receipt of the alternative approach to the charged offenses which was argued by Alvin Alston was certainly not "deficient." Mr. Alston is given wide latitude as to how to address the jury, and very often defense counsel give an alternate to the jury rather than a more difficult, more serious offense in the hopes that the jury will select the alternate versus the more serious offense. This is done time and time again, and certainly does not represent a deficiency in Mr. Alston's representation. Additionally, no prejudice was proven to this Court. Petition is DENIED.

Op. & Order 4–5.

Next, Brock claims that Alston was ineffective for failing to request a "proof of intent" instruction. Judge Martin rejected the claim, concluding that:

> The Court is aware that the trial court gave the instruction on "possession with intent" with respect to the cocaine. To this Court, this is sufficient explanation to the jury of the issue and question of intent. No separate instruction was warranted as the jury was explained the concept of intent vis a vis the instruction given. There is absolutely no proof that the failure to secure this instruction was deficient or prejudiced the Petitioner's defense in any way. Petition is DENIED.

*Id.* at 4.

Finally, Brock alleges that his trial counsel violated his Sixth Amendment rights by failing to subpoena or call any defense witnesses. The post-conviction court found no merit to the claim, holding that:

> Aside from the fact that this is merely a bald assertion with no evidence or support given at the hearing on the post-conviction relief, this Court notes that no witnesses were called. Petitioner alluded to a witness who apparently owned the vehicle that he was driving the day of his arrest. Petitioner did not call the witness at the time of the post-conviction hearing nor any other witness[] that may have assisted him in his defense at the trial on the merits. Petitioner's allegation is unpersuasive to this Court. This Court will not speculate or reach conclusions based on the mere assertion that witnesses could have been called and could have

> been instrumental in a successful defense to the offenses. The Court does not glean from the actions of trial counsel any deficiency nor any prejudice. DENIED.

*Id.* at 5.

Plainly, the post-conviction court employed the *Strickland* analysis as the "seminal and controlling case" with regard to these issues and found Brock's trial counsel to be a "seasoned and experienced" counsel. *Id.* at 1 & 3. Judge Martin's determination, supported by the record, that the attorney's actions involved reasonable tactical decisions and that Brock had failed to show prejudice were not an unreasonable application of the law and facts and are presumed correct. The Court finds no basis to overturn the post-conviction court's decisions.

**II. Inconsistent Verdicts**

Brock contends that his acquittal for distribution of cocaine was inconsistent with his conviction for possession of cocaine with intent to distribute. Respondents argue that Brock does not specify what federal constitutional right was violated by the trial court.

Inconsistent verdicts generally provide no basis for relief as long as the conviction is supported by sufficient evidence. *See Hess v. Medlock*, 820 F.2d 1368, 1374–75 (4th Cir. 1987) (citing *United States v. Powell*, 469 U.S. 57, 66 (1984)); *Cortis v. Kenney*, 995 F.2d 838, 841 (8th Cir.1993) ("Although 'symmetry of results may be intellectually satisfying,' it is not constitutionally required." (quoting *Standefer v. United States*, 47 U.S. 10, 25 (1980))); *see also Dunn v. United States*, 284 U.S. 390, 399 (1932); *United States v. Thomas*, 900 F.2d 37, 40 (4th Cir. 1990).[2] There exists no inconsistency in the jury's verdict here. Indeed, as noted by the Court of Special Appeal of Maryland on direct appeal, the jury could have concluded that the

---

[2] An inconsistent verdict in a state-court trial, even in a bench trial, does not violate the Fourteenth Amendment's Due Process Clause if "the guilty verdict ... is supported by sufficient evidence and is the product of a fair trial." *Harris v. Rivera*, 454 U.S. 339, 344 (1981).

evidence did not establish that Brock actually distributed cocaine, but "that the amount of cocaine recovered from him at the time of his arrest was of sufficient quantity and circumstance to [reasonably] indicate an intent to distribute it." Sept. 14, 2009 Order; *Brock*, No. 2177, slip op. at 7. Brock's claim provides no basis for habeas relief under 28 U.S.C. § 2254(d).

## Conclusion

In light of the rulings of the court, Brock's petition for habeas corpus relief will be denied, and this case will be dismissed by separate Order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller–El v. Cockrell*, 537 U.S. 322, 336–38, (2003). Brock does not satisfy this standard, and the court declines to issue a certificate of appealability. A separate Order follows.

Date: July 10, 2015

_____
Paul W. Grimm
United States District Judge